**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MICHAEL PAXTON,                          :

        **Plaintiff,**                    :        **Case No. 2:04-cv-552**

     **v.**                              :        **Judge Holschuh**

THE WASSERSTROM COMPANY,                 :        **Magistrate Judge Kemp**

      **Defendant.**                    :

                               :

**Memorandum Opinion and Order**

      Plaintiff brings this action under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., alleging that Defendant improperly used Plaintiff's absences, which qualified as leave under the FMLA, as a negative factor in its determination to terminate Plaintiff's employment. Plaintiff also asserts a supplemental state-law claim of termination in violation of public policy. This matter is before the Court on Defendant's motion for summary judgment. (Doc. # 24).

**I. Background**

      Defendant is in the business of, *inter alia*, selling restaurant equipment and supplies. (Deposition of Rodney Wasserstrom at p. 8; Deposition of Susan Coffman at p. 10). Plaintiff was hired as a "stocker" for Defendant's Columbus, Ohio Superstore in October 1997. (Complaint at ¶ 2; Deposition of Michael Paxton at p. 14). In 1999, Plaintiff was promoted to the position of sales representative. (Compl. at ¶ 2; Paxton Dep. at pp. 16-17). In 2002, Plaintiff was once again promoted, this time to the position of merchandising manager. (Compl. at ¶ 2; Paxton Dep. at p. 20).

As a merchandising manager, Plaintiff's job duties included selling equipment and supplies to customers, keeping the store in an orderly manner, merchandising product, and supervising stocking associates. (Paxton Dep. at pp. 20-21). During this time period, Plaintiff's supervisor was Susan Coffman. (Id. at pp. 18-20). Plaintiff states that he had a good relationship with Coffman and that he received numerous positive job evaluations as well as annual merit pay raises during his employment with Defendant. (Id. at pp. 25, 63-64; Exhibits B-I, attached to Coffman Dep.).

On several occasions over the course of his employment, Plaintiff requested time off from work. Plaintiff explains that many of these absences were to care for his parents and family members who had serious medical conditions. (Compl. at ¶¶ 5, 11; Paxton Dep. at p. 72). For example, Plaintiff indicated that his mother had a heart condition, severe arthritis, and had fallen and broken her elbow while he was employed with Defendant and that his father suffered from renal failure, a heart condition, and had leg surgery and pneumonia during that time period. (Compl. at ¶ 10; Paxton Dep. at pp. 71-72). Plaintiff also indicated that, on several occasions, he had to care for his "critically ill" aunt. (Compl. at ¶ 15; Paxton Dep. at p.79).

Plaintiff contends that he had general conversations with Coffman about his parents' health problems and that she was aware that several of his absences were to care for his family members. (Paxton Dep. at pp. 85-86; Coffman Dep. at pp. 33-36). However, Plaintiff admits that he did not expressly request FMLA leave. (Paxton Dep. at pp. 77-78). Most, if not all, of Plaintiff's absences were approved as Paid Time Off ("PTO").[1] (Id. at pp. 56-57).

---

[1]PTO is Defendant's annual leave program, which incorporates the traditional vacation, anniversary holiday and sick pay plans. (Exhibit 2, at p. 37, attached to Paxton Dep.).

In February 2004, Plaintiff requested time off from work to meet his son who was returning from military service in Iraq.  (Paxton Dep. at pp. 29, 33).  However, Plaintiff's requested time off conflicted with the annual Pizza Show, a sales/marketing event for vendors in the restaurant business.  (Id. at pp. 33-34).  Plaintiff was informed that attendance was required of all employees.  (Id. at pp. 33-34).  Plaintiff, however, also approached Coffman's supervisor, Joe Keel, about taking some time off during the Pizza Show.  (Id. at pp. 35-36).  Although sympathetic to Plaintiff's situation, Keel informed Plaintiff that he needed to be at the Pizza Show.[2]  (Id. at p. 36).

During the Pizza Show, Plaintiff sat down at a table to call his wife, who was picking up their son from Fort Campbell, Kentucky.  (Id. at p. 42).  While sitting at the table, Plaintiff was approached by Rodney Wasserstrom, the President of the Company.  (Id.; Wasserstrom Dep. at p. 14).  Wasserstrom inquired why Plaintiff was sitting at a table and not assisting customers.  (Wasserstrom Dep. at pp. 14-15).  Plaintiff admits that he became angry and reacted in an unprofessional manner.  (Paxton Dep. at pp. 44-46; Wasserstrom Dep. at p. 16).

On February 18, 2004, Plaintiff met with Coffman and Keel to discuss performance issues.  (Compl. at ¶ 4; Paxton Dep. at pp. 50-52).  Plaintiff was given a written memorandum that provided, in relevant part:

> There have been several occasions over the past few months that Mike has missed work.  Mike has had family members with health issues, and it is understandable that he needs to take [Paid Time Off] in those situation.  Because Mike has had to take so much time off for those reasons, he needs to understand that in combination with his sick time, and time he has taken off for

---

[2]Plaintiff was, however, permitted to take three days of PTO leave later that same week to spend time with his son.  (Coffman Dep. at p. 66; Paxton Dep. at pp. 49-50).

personal pleasure  has affected his performance in a negative
manner.  Below is a list of days missed recently:

12-9- Tuesday- last minute request off
12-19 Friday- called off sick
12-29 Monday- left work sick at 10:15
01-02 Friday- last minute request off
01-09 Friday- left work sick
01-13 Tuesday- last minute request off
01-14 Wednesday- took extra time off at lunch
01-15 Thursday- left work early
01-16 Friday- asked to leave work sick- was denied request
01-27 Tuesday- left work early
02-03 Tuesday- came in late (1:00)
02-05 Thursday- left work early
02-10 Tuesday- last minute request off for son's military leave
02-11 Wednesday- last minute request off for son's military leave
02-12 Friday- last minute request off for son's military leave- son
left on Thursday


Mike was put in a supervisory position in the Columbus Superstore
as merchandising manager.  His frequent Absences have affected
his credibility with the other members of the store.  He has been
one of two key-holders in the store, and his position requires that
there be no attendance issues.  Because of the seriousness of this
issue, Mike is being relieved of his duties as key holder and
supervisor.  Furthermore, Mike needs to address his attendance
issues if he wants to continue employment with the Wasserstrom
Company.  He will be required to provide a doctor's excuse if he
misses any shift.  Mike will not be permitted to leave work early,
he will work his shifts as scheduled.  Mike will not be granted time
off requests until further notice.

In addition to his attendance, Mike needs to address his
performance in the areas of productivity, organization and sense of
urgency.  Mike needs to understand that if he does not improve his
productivity immediately, he will not remain employed by the
Wasserstrom Company.  The following specific areas are expected
to be addressed:

Productivity
Mike is required to provide me with a daily to-do list with time
frames and what has been accomplished by him that day....

4

Mike needs to reduce the time he spends sitting at his desk....

Organization/Accountability
Mike is expected to keep his office area neat and orderly.  At no
time is there to be merchandise left in his office.  Mike needs to
process his paperwork daily, and file all paperwork so that others
may locate it....

Store Condition
Over the past few months, Mike has had no sense of urgency in
regards to being out of product.  Mike must understand his sole
purpose in the store is as a support person, and if he does not keep
the shelves full, and others have to step in to do that job, he makes
his position unnecessary....

Mike is expected to spend the majority of his day on the sales
floor, working on the cleanliness and presentation of the store.
Mike needs to make sure displays are full, priced correctly, and
properly signed.  Mike needs to make sure shelves are faced and
neat, and all products have tags....

Personal Behavior
Mike's behavior at the pizza show was unacceptable.  His
confrontational attitude toward Rodney Wasserstrom was
unprofessional and disrespectful and provides a poor example to
associates and customers, given that this happened in view of the
public....

It is with this understanding that Mike is expected to address these
issues.  Failure to do so will result in termination.

(Exhibit 1, attached to Paxton Dep.; Exhibit L, attached to Coffman Dep.).

Thereafter, Coffman documented that, despite claims of improved performance, "[a]t this

time, Mike is not meeting the required performance standards of the job.  We do not feel Mike

has shown his willingness to try to meet these standards in the future.  Because of this, we have

decided to terminate his employment with the company."  (Exhibit P, attached to Coffman Dep.).

On March 5, 2004, Plaintiff was provided an "Associate Warning Notice," that noted on-going

performance issues and was also given a "Separation Notice."  (Exhibits Q, R, attached to

<u>Coffman Dep.</u>).  Defendant terminated Plaintiff's employment effective March 5, 2004.  (<u>Compl.</u>

at ¶ 8; <u>Paxton Dep.</u> at p. 71; <u>Coffman Dep.</u> at p. 93).

## II. Discussion

### A. Standard

Defendant has moved for summary judgment with respect to all of Plaintiff's claims.

Although summary judgment should be cautiously invoked, it is an integral part of the Federal

Rules, which are designed "to secure the just, speedy and inexpensive determination of every

action."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The

standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a

matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains

for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury

if they really have issues to try."  <u>Poller v. Columbia Broadcasting Sys.</u>, 368 U.S. 464, 467

(1962) (quoting <u>Sartor v. Arkansas Natural Gas Corp.</u>, 321 U.S. 620, 627 (1944)).  <u>See also</u>

<u>Lansing Dairy, Inc. v. Espy</u>, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine

if there are genuine issues of fact to be tried.  <u>Lashlee v. Sumner</u>,  570 F.2d 107, 111 (6th Cir.

1978).  The court's duty is to determine only whether sufficient evidence has been presented to

make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the

credibility of witnesses, or determine the truth of the matter.  <u>Anderson v. Liberty Lobby, Inc.</u>,

6

477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986);  Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  See also Anderson, 477 U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to

establish the existence of an element essential to that party's case and on which that party will

bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The nonmoving party must

demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings."  Hall v.

Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position

is insufficient; there must be evidence on which the jury could reasonably find for the opposing

party.  Anderson, 477 U.S. at 252.  The nonmoving party must present "significant probative

evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material

facts."  Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993).  The court may,

however, enter summary judgment if it concludes that a fair-minded jury could not return a

verdict in favor of the nonmoving party based on the presented evidence.  Anderson, 477 U.S. at

251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**B.  Application**

      **1.  FMLA**

Plaintiff claims that Defendant violated the FMLA by using FMLA-qualified leave as a negative factor in his termination. The FMLA was enacted, *inter alia*, "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). <u>See also Price v. City of Fort Wayne</u>, 117 F.3d 1022, 1024 (7th Cir. 1997). To that end, the FMLA entitles qualifying employees up to twelve weeks of unpaid leave each year in order to, among other things, "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Moreover, FMLA leave may be taken intermittently if medically necessary. <u>See</u> 29 U.S.C. § 2612(b)(1).

The Sixth Circuit has recognized "two distinct theories of recovery under the FMLA." <u>Hoge v. Honda of America Mfg., Inc.</u>, 384 F.3d 238, 244 (6th Cir. 2004). "Interference" or "entitlement" claims arise under 29 U.S.C. § 2615(a)(1), which reads, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." "Retaliation" or "discrimination" claims arise under 29 U.S.C. § 2615(a)(2), which prohibits employers from discharging, or discriminating against, employees who oppose unlawful FMLA practices. <u>See Hoge</u>, 384 F.3d at 244. More specifically, an employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c).

Courts have noted that there is often some difficulty in classifying a plaintiff's FMLA claim as either an interference claim or a retaliation claim, especially when the plaintiff does not

9

cite a particular statutory provision or identify the theory of recovery.  See Bradley v. Mary Rutan Hosp. Assoc., 322 F. Supp.2d 926, 938 (S.D. Ohio 2004) (citing Schmauch v. Honda of America Manufacturing, Inc., 295 F. Supp.2d 823, 831 (S.D. Ohio 2003)(citations omitted)).  In this case, it appears that Plaintiff seeks recovery under the second theory, i.e., retaliation or discrimination.  In particular, Plaintiff specifically alleges that Defendant impermissibly used Plaintiff's PTO, which qualified as leave under the FMLA, as a negative factor in its decision to terminate Plaintiff.[3]

There has also been some discussion about the appropriate analytical standard that should be applied to retaliation claims under the FMLA.  At least one judge in the Southern District of Ohio has adopted a single framework for analyzing all FMLA claims.  See Bradley, 322 F. Supp. 2d at 940.  However, because the most recent Sixth Circuit case law continues to recognize two distinct types of claims –interference claims and retaliation claims – based on two different analytical frameworks, the Court must follow those Sixth Circuit decisions.  See Hoffman v. Professional Med Team, 394 F.3d 414 (6th Cir. 2005); Heady v. United States Enrichment Corp., No. 04-5762, 2005 WL 1950793 (6th Cir. Aug. 16, 2005); DeBoer v. Musashi Auto Parts, Inc., No. 04-1067, 2005 WL 434526 (6th Cir. Feb. 25, 2005).  See also Kitts v. General Telephone North, Inc., No. 2:04cv173, 2005 WL 2277438, *14, n.3 (S.D. Ohio Sept. 19, 2005).  In any event, the parties appear to agree on the analytical framework that applies to Plaintiff's retaliation claim in this case.  (Compare Plaintiff's Memorandum Contra at p. 9, with Defendant's Reply, at p. 5).

---

[3]In any event, in addressing the motion for summary judgment, the parties only discuss a claim of retaliation.

10

Absent direct evidence that an employee was discharged for taking FMLA-qualified leave, FMLA "retaliation" claims are subject to the familiar burden-shifting analysis set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  See Gibson v. City of Louisville, 336 F.3d 511, 513 (6th Cir. 2003); Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314 (6th Cir. 2001).  Plaintiff has not presented any direct evidence of retaliation in this case.  Instead, Plaintiff relies on circumstantial evidence.  Therefore, this Court will analyze Plaintiff's retaliation claim under the McDonnell Douglas framework.

Under the McDonnell Douglas framework, Plaintiff must first establish a *prima facie* case of retaliation by showing that: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between his exercise of a right under the FMLA and the adverse employment decision.  Skrjanc, 272 F.3d at 314.  Once Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Id. at 315.  If Defendant meets this burden, Plaintiff must "produce sufficient evidence from which the jury may reasonably reject the employer's explanation."   Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994).  In other words, Plaintiff must show that the reason offered by Defendant was pretextual.

### a.  Exercise of FMLA Rights

Defendant contends that Plaintiff did not avail himself of a protected right under the

FMLA.  Plaintiff responds that: (1) his parents had serious medical conditions, (2) he notified his supervisor of those conditions, and (3) he requested leave.  For purposes of Defendant's motion for summary judgment, there is no dispute that Plaintiff's parents had serious health conditions as that term is defined under the FMLA.  Nor is there any dispute that Plaintiff requested time off from work.  Therefore, this Court must determine whether Plaintiff gave Defendant sufficient notice of his need to miss work due to those serious health conditions.

It is well established that, in order to invoke the protection of the FMLA, an employee must provide the employer with notice and a qualifying reason for requesting leave.  See Walton v. Ford Motor Co., 424 F.3d 481, 486 (6th Cir. 2005).  Defendant argues that Plaintiff never provided it with notice that he was requesting FMLA leave.  Defendant specifically identifies the following testimony from Plaintiff's deposition:

> Q.	Did you ever ask anyone about the Family Medical Leave Act?
>
> A.	No.
>
> Q.	Did you ever ask if you could take time off pursuant to the Family Medical Leave Act?
>
> A.	No.
>
> \*		\*		\*
>
> Q.	At any point in time during the course of your employment with Wasserstrom, did the topic of the Family Medical Leave Act come up with anyone at any point in time?
>
> A.	No.

(Defendant's Reply, at p. 6 (quoting Paxton Dep. at pp. 77-78)).

However, in Cavin v. Honda of America Manufacturing, Inc., 346 F.3d 713 (6th Cir.

2003), the Sixth Circuit explained the FMLA's notice requirement:

> [a]n employee does not have to expressly assert his right to take leave as a right under the FMLA....  Because an employee need not expressly invoke the FMLA, [t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.... [A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA ... has occurred....

Cavin, 346 F.3d at 723-24 (internal citations and quotations omitted).  See also Walton, 424 F.3d at 486; Brohm v. JH Properties, Inc., 149 F.3d 517, 523 (6th Cir. 1998).  Moreover, an employee can give notice sufficient to make his employer aware that he needs FMLA-qualifying leave without using the words "leave" or "leave of absence."  Cavin, 346 F.3d at 725 (citations omitted).

The Sixth Circuit has made clear that, "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case."  Cavin, 346 F.3d at 724 (citations omitted).  Thus, the mere fact that Plaintiff did not expressly request FMLA leave does not necessarily mean that Plaintiff did not avail himself of rights under the FMLA.  Instead, the critical question is whether Defendant was made aware that an event described in the FMLA had occurred.

A factually similar situation was addressed in Sahadi v. Per-Se Technologies, Inc., 280 F. Supp.2d 689 (E.D. Mich. 2003).  In Sahadi, the plaintiff had a history of attendance related issues during her employment.  At least some of the plaintiff's absences were due to her husband's serious health condition.  During the course of her employment, the plaintiff requested that, instead of taking her prescheduled vacation, she be permitted to take vacation days as

needed to care for her husband.  The plaintiff explained that she did not ask about FMLA leave because she wanted to use her vacation days.

After taking several vacation days to care for her husband, the plaintiff was warned that she could not have any more unscheduled time off within the next three months and that "[i]mmediate improvement" was required with respect to excessive call ins.  Sahadi, 280 F. Supp.2d at 693.  Nevertheless, the plaintiff continued to miss work in order to, *inter alia*, care for her husband.  The defendant concluded that the plaintiff had exceeded her accrued sick time and vacation time.  The defendant therefore terminated the plaintiff's employment.  Later, however, it was discovered that the plaintiff did in fact have enough sick and/or vacation time accrued to cover the absences.

The court in Sahadi first noted that a plaintiff who is requesting intermittent unforeseeable leave need not specifically state that they are invoking the FMLA.  Id.  The court then held that once the plaintiff notified the employer that leave was needed, it was up to the employer to "determine whether leave was sought under the Act and to obtain any additional information."  Sahadi, 280 F. Supp.2d at 697.  The court held that, based on the information provided to the defendant,

> a jury could find that [the plaintiff] invoked her FMLA rights by providing sufficient notice to her employer that she would need time off in order to care for her husband.  Once on notice, it became [the defendant's] obligation, not [the plaintiff's], to determine whether her time off is FMLA-qualifying.

Id. at 698.

In this case, Plaintiff concedes that he did not expressly request FMLA leave.  (Paxton Dep. at pp. 77-78).  According to Coffman, Plaintiff was not interested in FMLA leave because

14

he wanted to use his accrued PTO.  (Coffman Dep. at pp. 101-103).  Additionally, following

Plaintiff's termination, and in response to an inquiry from the Human Resources Department,

Coffman sent an email stating that, "[a]t no time did [Plaintiff] ever communicate any serious

health conditions of any family member that would require him to take any leave time.  He

communicated to me he was transporting family members to routine appointments."  (Exhibit S,

attached to Coffman Dep.).

　　　　Nevertheless, Plaintiff alleges that Coffman was aware of his need for FMLA-qualifying

leave.  (Paxton Dep. at pp. 85-86).  In particular, Plaintiff alleges that he informed Coffman of

his parents' medical problems and of his need to care for them.  (Paxton Dep. at pp. 73, 85-86).

Coffman concedes that she was aware that Plaintiff's parents had medical problems and that

Plaintiff often had to care for them.  (Coffman Dep. at pp. 33-36).  Thus, this Court concludes

that there is a genuine issue of material fact with respect to the notice that Plaintiff provided to

Coffman regarding his absences.

　　　　Moreover, Defendant's FMLA policy only serves to muddy the waters.  Pursuant to

Defendant's FMLA policy, an employee is "required to use all accrued, unused P.T.O. during the

[FMLA] leave period.  Once such benefits are exhausted, the balance of the leave will be

unpaid."[4]  (Exhibit J, at p. 44, attached to Coffman Dep.; Exhibit 2, at p. 44, attached to Paxton

Dep.).  Thus, the mere fact that Plaintiff's requested absences were approved as PTO does not

necessarily mean that they were not also FMLA-qualified.  In fact, any time one of Defendant's

employees requests FMLA leave, they are required to exhaust their PTO first.  Under these

---

[4]The implementing regulations specifically permit an employer to require employees to
substitute accrued paid leave for FMLA leave.  29 C.F.R. § 825.207(a)

circumstances, the Court concludes that a genuine issue of material fact exists as to whether Plaintiff provided enough information for Defendant to reasonably conclude that an event described in the FMLA had occurred.

### b. Adverse Employment Decision

There is no dispute that, in this case, Plaintiff was subject to an adverse employment action.  Plaintiff's employment was terminated on March 5, 2004.  Therefore, Plaintiff has satisfied this element of his *prima facie* case of retaliation under the FMLA.

### c. Causal Connection

Defendant also argues that, even if Plaintiff did exercise rights under the FMLA, he has nevertheless failed to establish a causal connection between the exercise of those rights and his termination.  This Court notes that, the burden of demonstrating a causal connection between an employee's FMLA- qualifying leave and termination, at the *prima facie* stage, is minimal.  See Dage v. Time Warner Cable, 395 F. Supp.2d 668, 676 (S.D. Ohio 2005).

In Sahadi, the defendant moved for summary judgment with respect to the plaintiff's FMLA-retaliation claim arguing, *inter alia*, that the plaintiff had failed to establish a causal connection between her termination and any exercise of rights under the FMLA because the plaintiff did not expressly request FMLA leave.  The court, however, noted that the plaintiff testified that she had spoken with her supervisor about needing time off to care for her husband. The court held that "[t]his creates a factual question not only as to whether [the plaintiff] invoked her FMLA rights, but also whether [the supervisor] was aware that [the plaintiff] was missing work to care for her husband."  Sahadi, 280 F. Supp.2d at 699-700.  The court therefore denied the motion for summary judgment.

16

It is clear that, in this case, Plaintiff was terminated, at least in part, because of his absences.  Moreover, there is no dispute, for the purpose of Defendant's motion for summary judgment, that many of Plaintiff's absences were to care for his parents who had serious health conditions.  Like <u>Sahadi</u>, there is a genuine issue of material fact with respect to whether Coffman knew that Plaintiff missed work to care for his parents.  As was noted *supra*, Plaintiff contends that he made Coffman aware of his parents' medical conditions and of his need to care for them.  (<u>Paxton Dep.</u> at pp. 73, 85-86).  Therefore, this Court cannot conclude that Defendant is entitled to summary judgment with respect to Plaintiff's FMLA claim.[5]

**2.  State Law Claim**

Plaintiff also claims that Defendant terminated his employment in violation of Ohio's public policy.  The Ohio Supreme Court first recognized an exception to the employment at will

---

[5]In moving for summary judgment, Defendant has not discussed the second or third prongs of the burden shifting analysis.  Therefore, this Court will not address those issues at this time.

doctrine[6] for terminations which violate public policy in <u>Greeley v. Miami Valley Maintenance</u>

<u>Contractors, Inc.</u>, 49 Ohio St. 3d 228, 235 (1990).  In order to prevail on such a claim ("<u>Greeley</u>

claim"), Plaintiff must establish:

> 1. a clear public policy manifested in the Ohio or United States Constitutions, a statute or administrative regulation, or in the common law (the "clarity element");
>
> 2. that the dismissal of employees under similar circumstances would jeopardize the public policy (the "jeopardy element");
>
> 3. that the discharge was motivated by conduct related to the public policy (the "causation element"); and
>
> 4. that the employer lacked a legitimate overriding business justification for the plaintiff's discharge (the "overriding justification element").

<u>Collins v. Rizkana</u>, 73 Ohio St.3d 65, 69-70 (1995) (citations omitted).  The clarity and jeopardy

elements are questions of law for the court to determine, while the causation and overriding

justification elements are questions of fact.  <u>Id</u>. at 70.

In moving for summary judgment, Defendant contends that Plaintiff has failed to

establish the jeopardy element of his <u>Greeley</u> claim.  In response, Plaintiff argues that his public

policy discharge claim "is based on the FMLA, as well as Ohio's policy of discouraging fraud

---

[6]Under the common law doctrine of employment at will, employment of a person hired for an indefinite period is "terminable at the will of either the employee or the employer . . . a discharge without cause does not give rise to an action for damages."  <u>Wiles v. Medina Auto Parts</u>, 96 Ohio St. 3d 240, 241 (2002) (citing <u>Collins v. Rizkana</u>, 73 Ohio St. 3d 65, 67 (1995)).  However, the right to terminate employees at any time is not absolute.  <u>Fawcett v. G.C. Murphy & Co.</u>, 46 Ohio St. 2d 245, 249 (1976).  Employers cannot terminate employees for unlawful reasons.  <u>Cavin v. Honda of Am. Mfg., Inc.</u>, 138 F. Supp. 2d 987, 990 (S.D. Ohio 2001) (citing <u>Mers v. Dispatch Printing Co.</u>, 19 Ohio St. 3d 100, 103 (1985)), <u>rev'd on other grounds</u>, 346 F.3d 713 (6th Cir. 2003).

18

and protecting its servicemen." (Plaintiff's Memorandum in Contra, at p. 18).  Defendant, however, argues that Ohio law does not support a public policy claim based on the FMLA and that Plaintiff's public policy claim is otherwise without merit.

### a. FMLA

When analyzing the jeopardy element of a Greeley claim based upon a statute, the issue is whether the remedies under the statute are adequate "to fully compensate an aggrieved employee who is discharged . . . in violation of the statute." Kulch v. Structural Fibers, Inc., 78 Ohio St. 3d 134, 155 (1997).  When a statute adequately protects society's interest as expressed in the statute, the public policy is not jeopardized by the absence of a recognized action for wrongful discharge.  Wiles v. Medina Auto Parts, 96 Ohio St. 3d 240, 244 (2002).

It is well established that the FMLA cannot form the basis for a public policy claim under Ohio law.  See Wiles, 96 Ohio St. at 241-42.  See also Johnson v. Honda of America Mfg., Inc., 221 F. Supp.2d 853, 858 (S.D. Ohio 2002).  Plaintiff concedes as much in his response to Defendant's motion for summary judgment.  This Court therefore concludes that Plaintiff's public policy claim is without merit in this regard.  Plaintiff, however, also argues that Ohio's public policy against fraud and of protecting its servicemembers also supports his public policy claim.

### b. Fraud

Plaintiff contends that committing fraud is against Ohio's public policy.  (Plaintiff's Memorandum Contra, at p. 17 (citing Russ v. T.R.W., 59 Ohio St.3d 42 (1991); Burr v. Stark

County Board of Commissioners, 23 Ohio St.3d 69 (1986)).  However, as noted by Defendant, Plaintiff's complaint does not contain any specific allegations of fraud.  In any event, Plaintiff has failed to explain how preventing his public policy claim in this case would jeopardize Ohio's public policy against fraud.

### c. Servicemembers

Additionally, Plaintiff contends that Ohio has a public policy of protecting servicemembers.  In support of this contention, Plaintiff cites to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*, and the Servicemembers Civil Relief Act, 50 App. U.S.C. § 501, *et seq.*  However, Plaintiff has failed to explain how either statutory provision is implicated in this case.  Plaintiff, himself, is not a servicemember.  Instead, Plaintiff complains that certain absences that he incurred while his son was home from Iraq were used as negative factors in Plaintiff's termination.

In any event, Plaintiff does not explain how preventing his public policy claim in this case would jeopardize Ohio's public policy of protecting Ohio's servicemembers.  Therefore, this Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's public policy claim.

**WHEREUPON**, Defendant's motion for summary judgment (Doc. # 24) is **GRANTED** in part and **DENIED** in part.  With respect to Plaintiff's public policy claim, Defendant's motion is **GRANTED**.  With respect to Plaintiff's FMLA claim, however, Defendant's motion is

**DENIED**.


In light of the forgoing, the Court will schedule a Final Pretrial Conference for **Friday**

**July 7, 2006 at 10:00 a.m.**


**IT IS SO ORDERED.**


April 3, 2006                                    /s/ John D. Holschuh
                                                 John D. Holschuh, Judge
                                                 United States District Court

21